United States District Court
Southern District of Texas
**ENTERED**
August 10, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| THALIA MARTINEZ, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| VS. | § | CIVIL ACTION NO. 4:25-CV-03130 |
| | § | |
| ENGIE S.A., *et al.*, | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

# ORDER

Pending before this Court is Defendant ENGIE S.A.'s Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Dismiss for Failure to State a Claim (Doc. No. 4) and Defendants ENGIE Mexico, S.A. de C.V., Tractebel GNP, S.A. de C.V., Tamauligas, S.A. de C.V.'s (collectively, the "ENGIE Mexico Defendants") Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Dismiss for Failure to State a Claim (Doc. No. 33). The Court is in receipt of all responses and replies, (Doc. Nos. 10, 15, 34, 35), as well as the supplemental briefing filed after the Parties conducted jurisdictional discovery (Doc. No. 40, 41). Upon close review of the pleadings, supplemental briefing, and the relevant legal standards, this Court **GRANTS** ENGIE S.A.'s Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 4) and **GRANTS** the ENGIE Mexico Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 33). Finding that this Court lacks personal jurisdiction over each of the Defendants in this case, this case is hereby dismissed without prejudice.[1]

[1] *See American Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed. App'x 662, 666 (5th Cir. 2004) (holding that when a district court does "not address the merits of plaintiff's allegations," the claims should be dismissed without prejudice for filing in an appropriate forum).

## I. Factual Background

As this Court has previously set out, *see* (Doc. No. 36), this case arises from a natural gas leak explosion that occurred in Matamoros, Tamaulipas, Mexico that allegedly injured Plaintiff Thalia Martinez. *See* (Doc. No. 1). Plaintiffs, Thalia Martinez, her spouse, Rafael Alejandro Martinez, and their minor children, E.J.T., A.I.A., and R.A., Jr. (collectively, "Plaintiffs") allege that this explosion was caused by the negligence and gross negligence of the Defendants. (*Id.*).

On June 12, 2025, Plaintiffs filed this lawsuit in the 80th Judicial District of Harris County, Texas, alleging that Defendants Felisa del Carmen Ros, ENGIE North America, Inc., ENGIE S.A., and the ENGIE Mexico Defendants are liable for negligence and gross negligence. (*Id.*). On July 7, 2025, Defendant ENGIE, S.A. removed the case to this Court. (*Id.*). Accordingly, the live Complaint in this case is the Original Petition filed in state court. *See* (*id.*).

On February 6, 2026, this Court dismissed the claims against Defendant Ros and Defendant ENGIE North America, Inc. for improper joinder. (Doc. No. 36). Still pending, however, were ENGIE S.A. and the ENGIE Mexico Defendants Motions for Lack of Personal Jurisdiction, (Doc. Nos. 4, 33), as well as Plaintiffs' Motion for Jurisdictional Discovery (Doc. No. 19). On February 9, 2026, the Court granted Plaintiffs' Motion for Jurisdictional Discovery and permitted the Plaintiffs to conduct "tailored jurisdictional discovery regarding ENGIE S.A. and the ENGIE Mexico Defendants for the narrow purpose of addressing specific jurisdiction over the Defendants." (Doc. No. 37). After the close of the supplemental discovery, the Court gave the Plaintiffs the opportunity to "supplement their briefing on the motions to dismiss" with whatever new information was gleaned. In April 2026, the Parties supplemented their briefing on the pending Motions to Dismiss for Lack of Personal Jurisdiction, (Doc. Nos. 40–42), and the Motions are now ripe for review. The Court considers the Motions below.

## II. Legal Standards

When reviewing a Rule 12(b)(2) motion, federal courts must assess whether there is sufficient personal jurisdiction over a non-resident defendant. A federal court may exercise personal jurisdiction over a non-resident defendant if: (1) the long-arm statute of the forum state allows the exercise of personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction over that defendant is consistent with Fourteenth Amendment to the United States Constitution. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). The two-part jurisdictional inquiry collapses into a single step in this forum because the Texas long-arm statute extends to the limits of federal due process. Tex. Civ. Prac. & Rem. Code § 17.042; *Johnston*, 523 F.3d at 609; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). To meet the requirements of due process, the plaintiff must demonstrate: (1) that the non-resident purposely availed himself of the benefits of the forum state by establishing minimum contacts with the state; and (2) that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Mullins*, 564 F.3d at 398. "Minimum contacts" can give rise to either specific personal jurisdiction or general personal jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).

General personal jurisdiction exists when a non-resident defendant's contacts with the forum state are "substantial, continuous, and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–19 (1984); *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 374 (5th Cir.2003). "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir.2007) (citation omitted). Generally, "an individual is subject to general jurisdiction in [his] place of domicile." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).

The court "may exercise 'specific' jurisdiction in a suit arising out of or related to the defendant's contacts with the forum." *Luv N'care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). The Fifth Circuit has articulated a three-step analysis for specific jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The touchstone of the minimum contacts inquiry is whether the defendant's conduct shows that it "reasonably anticipates being haled into court" in the forum state. *Id.*

When a district court rules on a Rule 12(b)(2) motion without a hearing, the plaintiff must make a *prima facie* showing of jurisdiction. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). The court may consider the contents of the record, including affidavits or other recognized methods of discovery, in deciding whether to exercise personal jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). Generally, the court accepts the plaintiff's non-conclusory, uncontroverted allegations as true and resolves conflicts between the facts contained in the parties' affidavits in the plaintiff's favor. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

## III. Analysis

ENGIE S.A. and the ENGIE Mexico Defendants request this Court to find that these entities do not have the required "minimum contacts" with this jurisdiction and are therefore cannot be subject to general or specific jurisdiction in Texas. The Plaintiffs, on the other hand, request this Court to find that these entities have purposefully availed themselves in this jurisdiction by operating as an

"integrated model" through various subsidiaries with operations in Texas. The Court addresses these arguments below.

**A. ENGIE S.A.**

ENGIE S.A., the parent company of the ENGIE Mexico Defendants, requests this Court to find that it does not have sufficient "minimum contacts" and is therefore not subject to personal jurisdiction in Texas. In the Petition, the Plaintiffs allege the following jurisdictional facts:

> The Court has personal jurisdiction over Engie S.A. because its contacts and affiliations with the State of Texas are so continuous and systematic as to render Engie S.A. essentially at home in Texas. Engie S.A. is a French multinational energy services company headquartered in La Defense, France, and it operates in over thirty countries worldwide. Engie S.A. employs approximately 100,000 people throughout Europe, North America, South America, Asia, the Middle East, and Africa. Engie S.A.'s operations outside of France are performed by regional hubs and country-level operations and divisions throughout the world, including Defendants Engie Mexico, S.A. de C.V., Engie Maxigas, Tamauligas, S.A. de C.V., and Tractebel GNP, S.A. de C.V. (collectively the "Engie Group"). Engie S.A. refers to itself, its regional hubs, and its country level operations and/or divisions as the "Engie Group."
>
> Engie S.A. is registered to do business in the State of Texas and maintains an agent for service of process in the State of Texas. Engie S.A.'s principal office in the United States is located in Houston, Harris County, Texas. In April 2022, Engie S.A. entered into a contract to purchase natural gas from a facility owned by Rio Grande LNG, LLC located in Cameron County, Texas. Engie S.A. entered into this contract in order to purchase 91,200,000 MMBtu per calendar year for the next fifteen years, with a majority of the natural gas to be exported to Mexico to provide energy to the citizens of Mexico, including Matamoros, Tamaulipas, Mexico. Additionally, Engie S.A. has acquired numerous construction-stage projects with a vast majority of those projects contained within ERCOT, which manages the flow of electricity to about 90% of the citizens of Texas.

(*Id.* at 5–6).

After this Court permitted the Plaintiffs to conduct jurisdictional discovery, the Plaintiffs also produced ENGIE S.A.'s "Universal Registration Document" that contains information about the entire global network of ENGIE entities. *See* (Doc. No. 40-1). The Universal Registration Document explains that ENGIE is organized by "Global Business Units," or "GBUs," which are separated by

ENGIE's "four key business lines." (*Id.* at 12). One of those GBUs, "GBU Networks," "delivers the energy in particular through independent subsidiaries . . . [by] develop[ing] and operat[ing] gas transmission and distribution networks, storage and [liquid natural gas] terminals, as well as electricity transmission lines." (*Id.*). Further, the Document states that "[t]he operating activities in the countries report to the corresponding GBU." (*Id.*). For North and South America, the ENGIE subsidiaries report to "GBU Networks – Americas." (*Id.* at 14). It appears to be undisputed that the Managing Director of GBU Networks – Americas at the time of the incident was located in Houston, Texas. (Doc. No. 40 at 3).

ENGIE S.A., however, provided more specific and pertinent jurisdictional evidence. As the Court noted above, this Court can consider "affidavits or other recognized methods of discovery" to determine whether personal jurisdiction exists. *Spademan*, 772 F.2d at 1192. ENGIE S.A. provided the Declaration of Olivier Remy, the Chief Legal and Ethics Officer for GBU Networks. (Doc. No. 4-1). The Declaration sets out that "ENGIE S.A. is incorporated under the laws of France and has its corporate headquarters and principal place of business in La Defense, Paris, France." (*Id.*). The Declaration further clarifies that while ENGIE North America, Inc. is a subsidiary of ENGIE S.A. that is located in Houston, Texas, the entities are completely distinct. (*Id.*). The entities "have separate by-laws and separate boards of directors," "conduct separate corporate formalities," "have separate officers," and "maintain separate accounting systems and keep separate financial records." (*Id.* at 3). The Declaration states that "ENGIE S.A. does not employ any personnel in Texas, have any customers in Texas, have any bank accounts in Texas, own any property in Texas, or own or lease any office space in Texas." (*Id.*). Further, the Declaration states that "none of ENGIE S.A.'s day-to-day company functions are administered in Texas" and that "ENGIE S.A. is registered to do business in Texas for the limited purpose of purchasing liquid natural gas from a seller in Texas" for a future (currently still

under construction) natural gas terminal that may one day cross the Texas–Mexico border. (*Id.* at 4). The Court considers these jurisdictional facts to determine whether the Plaintiffs have established a *prima facie* case that ENGIE S.A. is subject to general or specific personal jurisdiction.

**1. General Jurisdiction**

The Petition alleges that "[t]he Court has personal jurisdiction over Engie S.A. because its contacts and affiliations with the State of Texas are so continuous and systematic as to render Engie S.A. essentially at home in Texas." (Doc. No. 1-3 at 6).[2] "A court has general jurisdiction over a corporate defendant where the corporation's 'affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State,' the paradigm examples of which are the corporation's place of incorporation and principal place of business." *Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*, 943 F.3d 239, 250 (5th Cir. 2019) (relying on *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). Nevertheless, "[t]he exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402 (2017) (quoting *Daimler*, 571 U.S. at 139). "Courts have made clear that it is 'incredibly difficult' for a plaintiff to establish general jurisdiction under the 'exceptional case doctrine.'" *Garcia Hamilton & Assoc., L.P. v. RBC Cap. Markets, LLC*, 466 F. Supp. 3d 692, 698–99 (S.D. Tex. 2020).

---

[2] The Court notes, however, that the Plaintiffs did not provide to the Court any briefing on general jurisdiction. Instead, the Plaintiffs' Response to the Motion to Dismiss, which focuses exclusively on specific personal jurisdiction, includes a footnote that states: "To be clear, however, Plaintiffs are not waiving their argument that general personal jurisdiction may be proven to exist in discovery of ENGIE S.A.'s exceptional contact in Houston and elsewhere in Texas; however, for the purposes of responding to this motion, Plaintiffs submit that specific personal jurisdiction is sufficient for the Court to overrule this motion at this time." (Doc. No. 10 at 15 n.3). While the Plaintiffs did not provide any argument on general jurisdiction and the Court finds that the argument may have been waived, the Court nonetheless addresses this issue for the purposes of this Order.

In this case, ENGIE S.A. is incorporated under the laws of France. (Doc. No. 4-1 at 2). ENGIE S.A. "has its corporate headquarters and principal place of business in La Defense, Paris, France." (*Id.*). ENGIE S.A. does not have "an office, mailing address, place of business, bank account, or real property in Texas." (*Id.*); *see also Diece-Lisa*, 943 F.3d at 250. ENGIE S.A. has no employees in Texas, and none of its "day-to-day company functions are administered in Texas." (Doc. No. 4-1 at 4). While ENGIE S.A. is registered to do business and be served in Texas, (*id.*), "[a]ppointment of a registered agent for service of process and registration to do business in Texas are not exceptional circumstances that make a corporation at home in Texas." *Pruitt Tool & Supply Co. v. Noble Energy, Inc.*, No. 4:23-CV-01576, 2024 WL 3745979, at *6 (S.D. Tex. July 9, 2024), *adopted by*, 2024 WL 3744390 (S.D. Tex. Aug. 8, 2024). These uncontested facts fail to reflect that ENGIE S.A.'s principal place of business or place of incorporation is Texas, or that any of its (very limited) contacts with Texas are "so continuous and systematic as to render it essentially at home" here. *See Diece-Lisa*, 943 F.3d at 250. Accordingly, the Court finds the Plaintiffs have not established a *prima facie* case that ENGIE S.A. is subject to general jurisdiction in Texas.

**2. Specific Jurisdiction**

The Court next addresses whether the Plaintiffs have established a *prima facie* case that ENGIE S.A. is subject to specific personal jurisdiction in Texas.[3] The Plaintiffs contend that ENGIE S.A. is subject to specific personal jurisdiction because (1) its subsidiary entities have sufficient contacts in Texas and (2) the Plaintiffs' injuries arise out of those contacts in Texas. Specific jurisdiction exists

---

[3] The Court notes that while the Plaintiffs extensively brief specific jurisdiction, the Original Complaint only alleges that ENGIE S.A. is subject to general jurisdiction in Texas. *Compare* (Doc. No. 1-3 at 6) ("General Personal Jurisdiction Over Defendant Engie S.A.") *with* (*id.* at 8) (alleging specific jurisdiction over the ENGIE Mexico Defendants). Nevertheless, the Court addresses this issue for the purposes of this Order.

when (1) a non-resident defendant has purposefully directed its activities and (2) the litigation results from alleged injuries that arise out of or relate to those activities. *Diece-Lisa*, 943 F.3d at 250. "The inquiry [of] whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014)). "[T]he relationship must arise out of contracts that the 'defendant [*itself*] creates with the forum State." *Id.* (quoting *Walden*, 571 at 284).

The Plaintiffs allege that ENGIE S.A. has sufficient minimum contacts in Texas to demonstrate that it has "purposefully availed itself of the privileges of conducting its activities in Texas" through its subsidiary, ENGIE North America, Inc. (Doc. No. 10 at 17). While the Petition includes allegations that ENGIE S.A.'s "principal office in the United States is located in Houston, Harris County, Texas," and that it is generally doing business in Texas, the evidence before the Court, as described above, clearly shows that ENGIE S.A. "has its corporate headquarters and principal place of business in La Defense, Paris, France." (Doc. No. 4-1 at 2). Nevertheless, it is undisputed that ENGIE North America, Inc., which has already been dismissed by this Court from this lawsuit, is headquartered in Houston, Texas. (*Id.*). The Plaintiffs contend that while ENGIE S.A. is located in France, ENGIE S.A. is sufficiently "interconnected" with and does business through the Texas subsidiary so that it has still purposefully availed itself to this jurisdiction. In other words, the Plaintiffs request this Court to "pierce the corporate veil" for jurisdictional purposes and find that ENGIE S.A., as the parent company, has the same contacts with this jurisdiction as its subsidiary.

The Fifth Circuit has established that generally, "the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated." *Diece-Lisa*, 943 F.3d at 251 (quoting *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004)). "This

'presumption of institutional independence . . . may be rebutted,' however, 'by "clear evidence," which requires a showing of "something beyond" the mere existence of a corporate relationship between a resident and nonresident entity.'" *Id.* (quoting *Freudensprung*, 379 F.3d at 346). "In determining whether the plaintiff 'has overcome the presumption of corporate separateness' such that the corporations may be 'fuse[d] . . . for jurisdictional purposes,' the following factors . . . guide our inquiry: '(1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities.'" *Id.* (relying on *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983)). "It is well-settled that where . . . a wholly owned subsidiary is operated as a distinct corporation, its contacts with the forum cannot be imputed to the parent." *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 773–74 (5th Cir. 1988).

While the Plaintiffs argue that ENGIE S.A. has minimum contacts with this jurisdiction through its subsidiary, ENGIE North America, Inc., the Court finds that the Plaintiffs have not established "clear evidence" that there is "something beyond" the mere existence of a corporate relationship between ENGIE S.A. and ENGIE North America, Inc. Though the Plaintiffs contend that ENGIE S.A. was "controll[ing] all of its western hemisphere operations" and making "[k]ey strategic decisions" by and through ENGIE North America, Inc. at its location in Houston, these allegations are controverted by the jurisdictional evidence. First, the Declaration of Olivier Remy clearly dispels the contention that ENGIE S.A. and ENGIE North America, Inc. are so "interconnected" as to essentially act as the same entity. The Declaration explains that while "ENGIE S.A. directly and indirectly owns equity interests in its subsidiaries, including ENGIE North America," ENGIE S.A. is a completely separate entity from the other ENGIE entities. The Declaration states that ENGIE S.A.

and ENGIE North America, Inc. "have separate by-laws and separate boards of directors," "conduct separate corporate formalities," "have separate officers," and "maintain separate accounting systems and keep separate financial records." (*Id.* at 3). Further, ENGIE S.A. "does not exercise control over ENGIE North America's day-to-day operations" and "its employees did not, in Texas, or elsewhere, make 'critical decisions regarding . . . natural gas pipelines'" related to this lawsuit. (*Id.* at 3–4).

The Plaintiffs only presented the Universal Registration Document as jurisdictional evidence. The Plaintiffs attempt to use this document to show that ENGIE S.A. controls and operates each of its subsidiaries across the world, including ENGIE North America, Inc. The Plaintiffs argue that because the Document shows that GBU Networks—Americas, which is apparently in charge of the distribution of natural gas, operates in Texas, then ENGIE S.A. operates in Texas, as well. The Court finds, however, that this Document does not amount to the type of "clear evidence" required to rebut the presumption of institutional independence. *See Diece-Lisa*, 943 F.3d at 251. The Court finds that while there is evidence that these entities, of course, have a parent–subsidiary relationship, ENGIE North America, Inc. appears to be a distinct corporation, and therefore, "its contacts with the forum cannot be imputed to the parent." *Southmark Corp.*, 851 F.2d at 773–74.

Even if the general contacts of the subsidiary were not be imputed to the parent, the Plaintiffs still contend that ENGIE S.A. should be subject to specific personal jurisdiction because it "entered into a contract to purchase natural gas from a facility owned by Rio Grande LNG, LLC located in Cameron County, Texas" in order to "purchase 91,200,000 MMBtu per calendar year for the next fifteen years, with a majority of the natural gas to be exported to Mexico to provide energy to the citizens of Mexico, including Matamoros, Tamaulipas, Mexico." (Doc. No. 1-3 at 6–7). The Plaintiffs argue, for the first time in their Response to the Motion to Dismiss, that by entering into this agreement, ENGIE S.A. purposefully availed itself of this jurisdiction and that the litigation resulted

from alleged injuries that relate to this agreement. The Court finds that even assuming, *arguendo*, that one single contract is enough to demonstrate a contact in Texas, the Plaintiffs have not shown how this litigation relates to that contract.

While the Plaintiffs generally claim that "the very same gas ENGIE S.A. undertook to distribute to customers in Matamoros was purchased by it in Texas, the[n] piped just across the border where it leaked and was ignited, thereby initiating the explosion which catastrophically burned Thalia Martinez," the Court finds that these are conclusory and speculative allegations with no supporting facts. (Doc. No. 10 at 19). In fact, the Court finds these statements to be misleading. The Plaintiffs have failed to provide any evidence that this agreement was at all related to the incident in Mexico. *See* (Doc. No. 15 at 8) (explaining that the Plaintiffs "provide[] zero alleged facts supporting its conclusion—no alleged facts showing where utilities in Matamoros source their natural gas or even that the Matamoros utility grid is somehow connected to a Texas LNG export facility."). In fact, ENGIE S.A. presented evidence that at the time of the incident, the alleged natural gas pipeline related to the agreement that would have carried natural gas across the Texas–Mexico border, was still under construction, not in operation, and therefore could not have had any relationship to this incident. *See* (Doc. No. 15-3). Therefore, this evidence, undisputed by the Plaintiffs, demonstrates that there is no apparent connection between the purchase of natural gas in Texas and the incident in Mexico. Without this evidence, the Court finds that the Plaintiffs have failed to state a *prima facie* case for specific jurisdiction.

Based on the jurisdictional evidence before this Court and accepting, as it must, the Plaintiffs' "non-conclusory, uncontroverted allegations as true," this Court finds that the Plaintiffs have failed to establish a *prima facie* case that ENGIE S.A. is subject to personal jurisdiction in Texas. Accordingly, any and all claims against ENGIE S.A. are dismissed without prejudice.

### B. The ENGIE Mexico Defendants

The Court turns next to the claims against the ENGIE Mexico Defendants. The Petition addresses the ENGIE Mexico Defendants as a group and alleges that this Court has general and specific jurisdiction over each of the three separate entities. The Petition alleges:

> In addition to and independent of general personal jurisdiction over the entire "Engie Group," this Court has general personal jurisdiction over Defendants Engie Mexico, S.A. de C.V., [], Tamauligas, S.A. de C.V., and Tracetbel GNP, S.A. de C.V. through three independent and co-equal modalities. First, these defendants are engaged in a single business enterprise with Engie S.A. and Engie North America, Inc. for the purpose of establishing personal jurisdiction for these Defendants in Texas. Second, the corporate veils of these Defendants should be pierced because Felisa Ros, at all relevant times, simultaneously, held leadership positions at [the ENGIE Mexico Defendants], giving her an atypical (astronomical) level of control over purportedly independent corporate entities and ultimately, imputing the actions of one to the other and "fusing" their actions for jurisdictional purposes. Third, at all times relevant, [the ENGIE Mexico Defendants] were wholly controlled by and acting as the agent for Defendant Engie S.A. [. . .]
>
> Upon information and belief, critical decisions regarding the maintenance, improvement, distribution and flow of the faulty natural gas pipelines made the basis of this suit, were made in Houston by Engie S.A. and/or Defendant Ros and were implemented in Mexico by [the ENGIE Mexico Defendants]. These decisions were made by Ros from 2021 through June 29, 2023 (the date of the explosion) in her various capacities as Head of Operational Performance and Implementation Support for Engie North America, Head of Operations Networks in Mexico, and Country Manager of Engie Mexico. Upon information and belief, various decisions made in Houston and implemented in Mexico by [the ENGIE Mexico Defendants] were links in the chain of causation ultimately resulting in the catastrophic explosion on June 29, 2023. [. . .]

(Doc. No. 1-3 at 7–10).

While the Plaintiffs present no evidence to substantiate these claims, the ENGIE Mexico Defendants presented evidence that certainly controverts them. According to the declarations of three different corporate officers from each of the three different entities, the ENGIE Mexico Defendants "are distinct and adequately capitalized corporations" with separate daily operations and separate books and accounts. *See* (Doc. Nos. 33-1, 33-2, 33-3). The entities also have separate and distinct

functions. *See* (Doc. No. 33-1) ("ENGIE Mexico, S.A. de C.V. provides supervisory and coordination services in various areas of the energy sector, as well as the general management of projects for the electricity and natural gas industry, in Mexico); (Doc. No. 33-2) ("Tractebel is a local distribution company that sells and distributes natural gas to customers . . . [in] Tampico, Ciudad Madero, Altamira, and Merida in Mexico."); (Doc. No. 33-3) ("Tamauligas is a local distribution company that sells and distributes natural gas to customers . . . in Matamoros, Reynosa, Rio Bravo, and Valle Hermoso in Mexico."). Each of the entities are incorporated under the laws of Mexico and have a principal place of business in Mexico. *See* (Doc. Nos. 33-1, 33-2, 33-3). Furthermore, none of these entities are located in Texas, have any customers in Texas, operate any infrastructure in Texas, own any property in Texas, own or lease any office space in Texas, or have any bank accounts in Texas. *See* (*id.*). The Court considers these jurisdictional facts to determine whether the Plaintiffs have established a *prima facie* case that the ENGIE Mexico Defendants are subject to general or specific personal jurisdiction.

**1. General Jurisdiction**

As the Court set out above, "[a] court has general jurisdiction over a corporate defendant where the corporation's 'affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State,' the paradigm examples of which are the corporation's place of incorporation and principal place of business." *Diece-Lisa*, 943 F.3d at 250. In this case, however, each of the ENGIE Mexico Defendants is incorporated in Mexico and has its principal place of business in Mexico. *See* (Doc. Nos. 33-1, 33-2, 33-3). None of the ENGIE Mexico Defendants have "an office, mailing address, place of business, bank account, or real property in Texas." (*Id.*); *see also Diece-Lisa*, 943 F.3d at 250. These entities have no employees in Texas, and none of the functions for any of the three entities are administered in Texas. (*Id.*). These uncontested facts fail to reflect that the

ENGIE Mexico Defendants have any contacts that are "so continuous and systematic as to render it essentially at home" in Texas. *See Diece-Lisa*, 943 F.3d at 250. Accordingly, the Court finds the Plaintiffs have not established a *prima facie* case that the ENGIE Mexico Defendants are subject to general jurisdiction in Texas.

**2. Specific Jurisdiction**

The Plaintiffs assert three general theories as to why the ENGIE Mexico Defendants are subject to specific personal jurisdiction. First, the Plaintiffs argue that the ENGIE Mexico Defendants are essentially "agents" of the Texas-based ENGIE North America, Inc. Second, the Plaintiffs argue that the ENGIE Mexico Defendants are alter egos of ENGIE North America, Inc. Third, the Plaintiffs argue that the ENGIE Mexico Defendant have sufficient minimum contacts with Texas because an executive employee for GBU Networks – Americas was located in Texas at the time of the incident. The Court addresses these arguments below.

**A. Agency**

The Plaintiffs argue that the ENGIE Mexico Defendants are subject to specific jurisdiction under the principles of agency. The Plaintiffs argue that Felisa Ros ("Ros"), an ENGIE North America, Inc. employee based in Houston, "simultaneously served as the operational director for the Mexico Defendants and exercised those responsibilities from Texas." The Plaintiffs argue that those Texas contacts should be imputed to the ENGIE Mexico Defendants. "Agency relationships . . . may be relevant to the existence of *specific* jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014) (emphasis in original). "[A] corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Id.* Accordingly, "a defendant may be found subject to personal jurisdiction as a result of the actions of an agent." *O'Quinn v. World Indus. Const.*, 68 F.3d 471, 472 (5th Cir. 1995) (per curiam).

The Petition alleges that "[u]pon information and belief, critical decisions regarding the maintenance, improvement, distribution and flow of the faulty natural gas pipelines made the basis of this suit, were made in Houston by Engie SA and/or Defendant Ros and were implemented in Mexico by [the ENGIE Mexico Defendants]." (Doc. No. 1-3 at 9). The Petition further alleges that "[t]hese decisions were made by Ros from 2021 through June 29, 2023 (the date of the explosion) in her various capacities as Head of Operational Performance and Implementation Support for Engie North America, Head of Operations Networks in Mexico, and Country Manager of Engie Mexico." (*Id.*). The Plaintiffs argue that Ros was operating as an agent for the ENGIE Mexico Defendants from Houston.

As a preliminary matter, this Court notes that it already dismissed Ros from this lawsuit for being improperly joined. *See* (Doc. No. 36 at 9). The Court explained that while the Plaintiffs alleged that Ros owed a duty to the Plaintiffs when she "undertook the activities of installing safety programs to train ENGIE's employees in Matamoros," the Petition "merely provides conclusory contentions that Ros undertook a duty to the Plaintiffs and that "ENGIE S.A. demonstrate[d] that Ros was not directly and personally involved in the alleged negligent conduct." (*Id.* at 8–9). The Court explained that "[a]t best, Ros was merely involved as a corporate office of ENGIE Mexico Defendants." (*Id.* at 9). The Court based this analysis on the unrefuted evidence that Ros "was assigned as the "Country Manager" of Mexican affiliates of ENGIE S.A., including ENGIE Mexico, S.A. de C.V." and that "[a]s Country Manager, [her] job responsibilities were consistent with the role of a senior business executive and comprised leading strategy initiatives for the country, stewarding a consistent company culture among the various entities, and serving as the representative of a range of business units to their various stakeholders." (Doc. No. 23-2 at 2). In this role, Ros "did not direct the asset-level operations of [the local distribution companies, such as Tamauligas and Tractebel]," but rather, those

companies were managed by a local Regional Director. (*Id.* at 3). Those Regional Directors "supervised daily operations, maintenance, and incident response for those assets." (*Id.*). Accordingly, Ros "did not personally direct the operations or maintenance at issue in the lawsuit," "author any safety procedures for Tamauligas or any [local distribution company] that owns and operates gas pipelines or distribution facilities in the state of Tamaulipas, Mexico, including training employees of Tamauligas regarding natural gas leaks and explosions." (*Id.*). She also "did not develop the procedures of Tamauligas or any other [local distribution company] for inspecting maintaining, and repairing gas pipelines in Tamaulipas, Mexico" and "did not direct operational decision regarding whether to shut off gas supply to areas of Tamaulipas, including Matamoros." (*Id.* at 4).

The jurisdictional discovery provided by the Parties does not conflict with the above-quoted Declaration. While the Plaintiffs contend that Ros "had clear authority to act on behalf of the Mexico Defendants regarding operational and safety decisions for their gas distribution network" and made operational decisions related to this lawsuit from Houston, the Court finds that these are conclusory and speculative allegations that are unsupported by any evidence and controverted by the Declaration of Ros. The Court finds that the Plaintiffs have failed to establish a *prima facie* case that the ENGIE Mexico Defendants are subject to personal jurisdiction through an agency theory.

**B. Alter Ego**

The Plaintiffs next argue that the ENGIE Mexico Defendants are subject to jurisdiction through the alter ego theory because these entities "operated as part of an integrated ENGIE enterprise under centralized control from Houston, and Ros—an [ENGIE North America, Inc.] employee based in Houston—directly participated in the tortious conduct." (Doc. No. 34 at 9). Similar to the argument presented for ENGIE S.A., the Plaintiffs ask this Court to impute the contacts of ENGIE North America, Inc. to the ENGIE Mexico Defendants because of the "integrated model." "To impute the

contacts of a third party to the defendant under an alter ego theory, the lines between the defendant and the third party must become 'so blurred that the two become one.'" *Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*, 2:15-CV-2049-JRG, 2016 WL 6917272, at *2 (E.D. Tex. Sept. 1, 2016) (quoting *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 663 (E.D. Tex. 2007)). However, "[a]s a general matter, the corporate form should not be lightly disregarded." *Id.* (citing *Manville Sales Corp. v. Paramount Sys. Inc.*, 917 F.2d 544, 552 (Fed. Cir. 1990)). "As a result, the typical corporate relationship between a parent and subsidiary . . . is not a sufficient basis to impute the contacts of a third party to the defendant under an alter ego theory." *Id.* (citing *QR Spex, Inc.*, 507 F. Supp. 2d at 663).

The Court notes, however, that none of the ENGIE Mexico Defendants are owned or controlled by ENGIE North America, Inc. *See* (Doc. Nos. 33-1, 33-2, 33-3). While the Universal Registration Document explains that the ENGIE Mexico Defendants are generally affiliated with GBU Networks – Americas,[4] *see* (Doc. No. 40-1 at 14), the Plaintiffs have not any established "clear evidence" that there is "something beyond" the mere existence of a corporate relationship between the ENGIE Mexico Defendants and ENGIE North America, Inc. *See Diece-Lisa*, 943 F.3d at 251. The Plaintiffs have certainly not provided any evidence that would suggest that ENGIE North America, Inc. owns any stock of the ENGIE Mexico Defendants, shares headquarters, directors, or officers, shares

---

[4] In their Supplemental Brief, the Plaintiffs present a variety of somewhat random facts that they argue demonstrates the "interconnected" web between ENGIE North America, Inc. and the ENGIE Mexico Defendants. The Plaintiffs identified the Managing Director for Networks Americas, Andre Angucu, and argued that his location in Houston should be imputed onto the ENGIE Mexico Defendants. *See* (Doc. No. 40 at 3–4). The Plaintiffs, however, provided no information about Angucu, his role at that company, or his connection to the ENGIE Mexico Defendants or to this lawsuit. Without that information, the Court does not consider his role to be any different from Ros, and the analysis remains the same. The Plaintiffs also describe certain "policies and decisions" from ENGIE S.A. that were "strictly imposed on all subsidiaries." (*Id.* at 4). The Court finds that these facts also do not affect this analysis, as the Court has found that ENGIE S.A. does not have minimum contacts in Texas.

accounting systems, or exercises any control over the ENGIE Mexico Defendants. *See Hargrave*, 710 F.2d at 1160. The Court finds that the Plaintiffs have failed to establish a *prima facie* case that the ENGIE Mexico Defendants are subject to personal jurisdiction through an alter ego theory.

**C. Other Minimum Contacts**

Finally, the Plaintiffs argue that the ENGIE Mexico Defendants have "purposefully directed their activities at Texas through operational decisions made in Houston by [Ros] and other ENGIE executives that directly caused the explosion in Mexico." (Doc. No. 34 at 5). The Plaintiffs argue, through a combination of the contentions set out above, that participation in the GBU Networks – Americas and oversight from the "North America hub," demonstrates that "Mexico operations were not independent, but supported and overseen from Houston, where decision-making authority was exercised." (*Id.* at 6). Despite the fact that this Court permitted the Plaintiffs to conduct jurisdictional discovery, the Plaintiffs only provided a single document, and that document only supports the fact that there is merely a corporate relationship between the ENGIE Defendants. The Declarations provided by the ENGIE Defendants repeatedly confirmed that these alleged "decisions" were not made in Houston. *See* (Doc. Nos. 33-1, 33-2, 33-3). Given that this Court accepts only the non-conclusory, uncontroverted allegations as true and can consider "the contents of the record, including affidavits or other recognized methods of discovery, in deciding whether to exercise personal jurisdiction," *see Spademan*, 772 F.2d at 1192, the Court finds that the Plaintiffs have failed to establish a *prima facie* case that the ENGIE Mexico Defendants are subject to personal jurisdiction in Texas. Accordingly, any and all claims against the ENGIE Mexico Defendants are dismissed without prejudice.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the ENGIE S.A.'s Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Dismiss for Failure to State a Claim (Doc. No. 4) and the "ENGIE Mexico Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Dismiss for Failure to State a Claim (Doc. No. 33). Any and all claims against ENGIE S.A., ENGIE Mexico, S.A. de C.V., Tractebel GNP, S.A. de C.V., and Tamauligas, S.A. de C.V. are dismissed without prejudice. Accordingly, this case is hereby dismissed without prejudice. The Court will enter a separate final judgment in accordance with Federal Rule of Civil Procedure 58.

It is so ordered.

Signed on this the 10th day of August 2026.

Andrew S. Hanen
United States District Judge